JOSEPH C. PRATHER, ETC., v. JAS. W. GAULT, ETC.

**Wills—"Children" and "Grandchildren."**

> The word "children will not ordinarily include "grandchildren," and will never be construed to embrace them, except in cases where it is necessary to give that construction to the word in order to effectuate the obvious intention of the testator.

**Wills—Estoppel of Devisees.**

> Where the executor and the devisees acted for several years on the theory that certain grandchildren of the testator were beneficiaries under the will, but finally some of the devisees challenged their right to participate under the will, but receded from such position, and asked for the judgment as rendered, recognizing the rights of the grandchildren, the other devisees are estopped to question the right of the grandchildren to participate as devisees.

APPEAL FROM MASON CIRCUIT COURT.

October 11, 1873.

OPINION BY JUDGE PETERS:

Ross Prather by his will which was probated in March, 1846, by the Mason County Court disposed of his estate in the following language:

"I bequeath to my wife Mary all my beds, bedding about the house, together with all the household and kitchen furniture to be controlled by her as she pleases. I wish the county court of Mason to appoint my wife Mary, John Cole and Charles B. Coons executors. I then wish the court to appoint these men—say Samuel Henderson, Miles C. Drake and Joseph Howe as commissioners to value all my property not before mentioned, consisting of my land, negroes and personal estate, together with all my hemp on hand and growing on land, also all cash and cash notes then on hand except one negro man named Harry, and one negro woman named Rachel, the above named Rachel to be the property of my wife Mary to do with as she pleases. The above named Harry is to be left on the place until the youngest child is of age, not to be valued with the rest of the property. I then wish it left optionary with my wife Mary whether or not any of the above property can be spared off the farm. Whether any property can be spared or not my wife Mary is to have full power to control until my youngest child becomes of age, at which

time my wife Mary, if living, is to have her dower according to law and the balance of the property to be divided equally among *all my children,* except my son Washington who has received all his share except twenty-five dollars, which twenty-five dollars *is* to be paid to him, as soon as can be after I am gone—except what may be made by my wife Mary and her children from my death up to the time of my youngest child becoming of age. If anything should be made, the amount made is to be equally divided between my wife Mary and her children by me, and the balance as above stated to be equally divided among all of my children (except my son Washington). In case my wife Mary does not live to see my youngest child come of age, John Cole and Charles B. Coons is to have full power to carry out the above arrangement as though she was living. The above is to be carried out to the letter so long as my wife Mary is my widow, but if she should cease to be my widow she is to have her dower according to law, and power as executrix to cease, and the business to be transacted by Cole and Coons for the benefit of my children, the above being my last will and testament."

Mrs. Mary Prather and Charles B. Coons qualified as executrix and executor of the will, and Mrs. Prather died before her youngest child arrived at 21 years of age, so that the execution of the will devolved on Coons, who survived her.

The testator was twice married; by his first wife he had six children, four sons and two daughters, and by his last wife he had seven children, six sons and one daughter. The two daughters by his first wife married and died before the death of their father—one named Mary Prather, married Edward L. Gault, and left at her death, her husband and a large family of children surviving her. The other named Sophia, married a man by the name of Dye, and she and her husband both died before her father, leaving several children all infants—both of the daughters died before the testator published his will.

The petition in this case was filed by Charles B. Coons, executor of Ross Prather, and as guardian of Wm. Prather, Joseph C. Prather and Margaret Dye, infant heirs of Ross Prather as she is designated in the petition, and by Edward L. Gault, guardian for Ealma A. Edward, K. Gault, Mary B. Gault, and Eliza J. Ringo, also infant heirs of said Ross Prather, and the said infants William Prather, Joseph C. Prather, Margaret Dye, Ealma A. Gault, John T. Gault, Mary

B. Gault and Eliza J. Ringo, who sue by their next friend, their respective guardian above named, and James W. Gault, Elizabeth K. Gault, Ross P. Gault, Reason F. Gault, John T. Gault, Wm. Dye, John A. Dye, Henry C. Dye, Ross P. Dye, Reason G. Prather, Thomas Prather, James S. Prather, Henry R. Prather and Moses Prather, heirs of the said Ross Prather, deceased, in which, after stating the facts that Ross Prather made and published his last will, and died in the early part of the year 1846, that the will was properly probated, that said Coons and Mrs. Mary Prather qualified as executor and executrix thereof; that Cole, who was also nominated as executor declined to qualify, and that Mrs. Mary Prather had departed this life, it is alleged that the youngest child of the testator was under 21 years of age when the petition was filed, and that Wm. C. Prather was also a minor; that the estate was a testator was undivided, that the principal part of the estate was a farm in Mason county containing about three hundred acres, a house and lot in Murpheysville and four slaves; that Rachel, one of his slaves, testator devised to his wife. That plaintiff Coons owns the shares of James S. Prather and Henry R. Prather, two of the sons and devisees of the testator, and their deeds to him for said shares are filed. That the farm was in a dilapidated state, and rapidly deteriorating in value, and if it should remain in the hands it then was, by the time the youngest child should become of age, it would be almost worthless, and that it was then yielding no income to the "heirs," and that "it was the desire of all the heirs," infants, and adults, that the farm should be sold; that the land in the vicinity of said farm was selling then at very high rates, that it was a favorable time to sell, and if the sale should be delayed until the youngest child becomes of age, it could not be sold for nearly as much as it would then bring. And Coons as guardian of the infants named, states that in his opinion the interest of his wards demands a sale of the land—and that it was the desire and certainly the interest of all the parties interested that the slaves should be sold. And all the petitioners united in the prayer for a sale of the real estate and slaves devised.

The petition was filed in March, 1860. Commissioners were appointed to ascertain and report the nature and value of the interest of said infants, their annual incomes, etc., and whether their interests required that the real estate should be sold. They reported on the

7th of November, 1860, that the interest of the infants required a sale not only of their real estate but of the slaves also.

In an amended petition filed in November, 1860, the names of the children of the testator by his first and second marriage are given, and it is therein alleged that John Prather, a son of the first wife, had died; but before his death, had sold and conveyed all his interest in his father's estate to Mrs. Mary Prather, and that Reason Prather had also conveyed all his interest in his father's estate to her.

That she had advanced to Thomas Prather, another son of testator, a slave about ten years of age. The names of the children of Mrs. Mary Gault are also set out, and so are the names of the children of Mrs. Dye. That Marion Prather, another daughter of said testator married after the death of her father, had a daughter and died leaving the daughter and her husband surviving.

That Nicholas Prather, a son of testator, died in 1860, over 21 years of age unmarried; that he died testate, leaving all his estate to his brothers and sisters, including Mrs. Violet Ricketts, wife of Thomas K. Ricketts, and Mrs. Nancy Coons, wife of said Charles B. Coons, who was his half sister, and these persons were made parties to the suit.

The children of said testator by his first wife allege that the conveyances made by John Prather, and Reason G. Prather to the widow, Mary Prather, were in consideration of advances made by her to them, out of the estate of their father the testator, and that said conveyances inured to the benefit of the devisees other than said John and Reason equally. They allege that the widow Mary Prather died intestate, and had no estate except what was devised to her by her husband. As to the slave Rachel devised to her, they submit the question to the court whether on the death of the widow said slave passed to all the devisees, or to the children of testator by his last wife. They also submit the question to the court whether Robert Tatton the surviving husband of the testator's daughter Maria has any interest in the land and slaves.

In April, 1865, all the devisees having arrived at age, but the youngest son, a sale of the real estate was adjudged by the court below and the master ordered to make the sale. The judgment recites that the guardians for the infants executed bonds with good sureties as required by the act of the legislature before the judgment was rendered.

The Gaults filed an amended petition in which they allege that there had been two unsuccessful efforts to sell the farm, and that a prudent sale of it could not then be effected, and ask that a part of the farm equal to their interest therein be allotted and set apart to them in one body.

That since the death of Mrs. Mary Prather which had occurred more than ten years before said amendment was filed, James S. Prather, Henry R. Prather, Wm. Prather, Moses P. Prather and Joseph C. Prather had been in possession of the farm receiving the rents and profits thereof, that they had abused it and permitted it to go to waste and were insolvent.

That Charles B. Coons had purchased the shares of said James S. and Henry R. Prather in the farm and that they had no interest in it, that Moses B. Prather removed from the farm in 1865 to Idaho, leaving the said James, Henry, William and Joseph C. Prather in possession. They pray for a partition of the land and that their portion may be set apart to them.

James S. Prather, Henry R. Prather, William Prather and Joseph C. Prather filed answers to the original and amended petition, and deny that the children of Mrs. Gault and Mrs. Dye have any interest in the estate left by the testator, and pray for a sale of the land, and a distribution of the proceeds amongst *his devisees*—and submit the question to the court whether the children of Mrs. Gault and Mrs. Dye have any interest in the estate.

Moses Prather filed his answer to the same effect. The Gaults and Dyes insist that the kindest and most friendly relations always existed between their grandfather, the testator, and their mothers and fathers and he did not exclude them from a participation in the distribution of his estate, but intended that they should have respectively the parts their mothers would have taken if they had been living at the date of the publication of the will and death of testator.

It is agreed that the widow of testator died in 1851 intestate and that the infant child of Maria Tatton, late Prather, died in infancy, after the death of Nicholas Prather and that Joseph C. Prather did not attain his majority till June 1865.

On the 29th of July, 1870, the Court below adjudged that the children of testator living at his death except Washington Prather, and the children of his daughters, Mrs. Gault and Mrs. Dye, took the estate under his will, the children of Mrs. Gault taking one part and

those of Mrs. Dye taking one part—and that on the death of the infant child of Mrs. Maria Tatton, its share passed to the brothers of her mother and to the children of her deceased sisters, those of the full blood taking full shares and those of the half blood half shares.   And a sale of the whole tract was adjudged except one-twelfth thereof, which was adjudged to the children of Mrs. Gault under their grandfather's will, and two two-hundredths and six-teenths which they took by descent from the child of Mrs. Tatton, which portions were to be laid off adjoining and set apart to the children of Mrs. Gault, and Washington Prather was adjudged to take a half share of the one-twelfth which passed to the heirs of the Tatton child.

The commissioners appointed to make the sale reported that he was unable to execute the order for the want of bidders—and the Gaults' part as adjudged was set apart to them.

In October 1870 after the commissioner failed to make the sale Wm. S. Prather, Joseph C. Prather, Moses P. Prather, and James S. Prather filed an amended pleading in which they withdraw their consent for a sale, and ask the court to appoint certain persons named by them as commissioners, to go upon the land, divide it, and to set apart to each of them in severalty the 1-12 and the 2-216 thereof, those being the portions adjudged to them respectively, by a former judgment of the court, and on the 29th of October, 1870, a judgment was rendered in conformity to their prayer.

In April, 1871, Wm. Prather filed his petition in the case alleging that he had recently become the purchaser of Henry Ross Prather's interests in said tract of land which he asserts to be 1-12 and 2-216 of the whole tract and asks to have these shares set apart in several-ty to him.

The commissioners appointed to make partition of the land per-formed that duty and made their report to the court to which James S. and Joseph C. Prather filed no exceptions and as to them the same was confirmed, but Wm. S. Prather did except to the report because the share set apart to him was inferior and of less value than those set apart to his brothers.   His exceptions were sustained and those commissioners were appointed to lay off and set apart to him 1-12 and 2-216 of said land—but what these commissioners did and whether his share of the land was laid off to him does not appear. As very soon after that appointment and order, Joseph C. Prather,

Wm. Prather, James S. Prather, Moses P. Prather, Henry R. Prather, John G. Hickman, assignee of Charles B. Coons, Thomas K. Ricketts and Violet his wife, Nancy Coons, and Thomas K. Ricketts, executor of Nicholas Prather, prosecuted these appeals from the judgment of July 1870—and from the subsequent judgments in the case now insist that Mrs. Gault's children and Mrs. Dye's children took nothing under the will of Ross Prather.

The testator lived near his two daughters at the time of their death, was fully apprised that they were dead, and knew that each of them left children who were living when he published his will. And it is well settled by repeated adjudication of this court, that the word *children* will not ordinarily include grandchildren and will never be construed to embrace them except in cases where it is necessary to give that construction to the word to effectuate the obvious intention of the testator.

But the question arises on this record whether or not appellants have not by their acts estopped themselves from controverting the right of appellee to the parts they claim.

It is manifest from the conduct of the parties interested, that they considered the children of their deceased sisters as beneficiaries under the will for a number of years after the death of testator. Coons, the executor in the original petition, filed some 14 years after the death of testator expressly alleges that they were, and never controverted their right during his life. All the devisees gave that construction to the will till 1865 when James, Henry, Joseph and William and Moses filed an answer in which they denied the right of appellees to any share in the estate.

But after the master failed to sell the land under the judgment of July, 1870, Moses, James, William, and Joseph Prather filed an amended pleading in which they asked the court to be permitted to withdraw their consent to a sale of the land, and ask the court to order a partition of it and that he adjudge to each of them 1-12 and 2-216 thereof to be set apart to them, claiming these as their respective portions of said land, and no more, the court ordered the partition to be made as they had prayed it should be done; the commissioners went upon the land and laid off and allotted to each of them their respective shares in severalty, as they had prayed it should be done, except that Moses declined to have his partitioned; but never afterwards asserted a claim to any more than 1-12 and 2-216

of the tract. The commissioners reported the manner in which they had executed the judgment having divided and set apart the 1-12 and 2-216 to each one of said parties. Two of them made no exceptions to the report and as to them it was confirmed and William excepted because the part allotted to him was not equal in value to the other lots, his exception was sustained, and the commissioner ordered to re-allot to him his part.

Neither the executor of Nicholas Prather who is a party on the record nor any other party in interest ever controvered appellees' rights, although they expressly allege that they were entitled to the shares adjudged to them.

It is evident therefore that the parties who at one time did controvert their rights retired from that position, and asked for the judgment as it is rendered and they are thereby estopped to question the correctness of what they themselves were instrumental in having done—and the other parties in interest wholly failed by any pleading to call in question the right of appellees to their respective shares claimed by them, but some of them in express language admit the right and the others impliedly admitted by failing to deny the allegations of the petition directly asserting the claim.

The judgments complained of must therefore be affirmed.

*Phister, for appellant.*

*H. Taylor, for appellee.*